Morning, Your Honor. Your Honor, Your Honor. Douglas Watts for Plaintiff and Appellant, Michael Oster. And... I'm sorry, go ahead, yes. Oh, sure. May it please the Court. We are here today on a case far less complicated than the one the Court just heard. This is an employment action in which the plaintiff lost on a 12B6 motion at the pleading stage, seemingly on an incorrect standard of interpretation of Rule 12B6. The primary issue for the Court to decide is, was there reversible error in denying the plaintiff leave to amend the complaint? And that's set forth in my brief as the third issue on appeal, but it really subsumes both the other issues, which is, did the plaintiff's First Amendment complaint contain a sufficiently pled First Amendment retaliation claim, and also this issue of plausibility of the issue? Did you – my understanding of the First Amendment retaliation here is that the employer – it's not that the sheriff himself prosecuted this or brought charges, but that the sheriff somehow caused the charges to be brought, and then that caused him to be fired. That's correct, Your Honor. Right. Now, a First Amendment retaliation claim requires retaliation – retaliatory prosecution requires an allegation, or at least arguably requires an allegation, of a lack of probable causes. Is there such an allegation in the complaint? No, Your Honor. There – I would submit to the Court in reviewing this case after today's oral argument that if I could draw an analogy to an auto mechanic, some cases come into this court needing an oil change. I think the complaint here needs a new head gasket and new floor mats and new tires as well. But you're representing that you could allege a lack of probable cause with regard to the charges brought, because if not, the case just dies. Is that right? I would – I would agree with that to a point. Oftentimes, you see these cases – these types of fact scenarios in employment cases involving sworn peace officers who look – But this isn't – that's what's odd here. This isn't a – it's an employment case, but it depends upon a retaliatory prosecution. So I would assume you have to meet the standard for a retaliatory prosecution to even get to the causation question. Yes, Your Honor. So that's the problem, it seems to me. I agree. And I think what – were this matter to go back on remand to the district court with direction to file a Second Amendment complaint with a new set of tires and a new is that very allegation, which came in that – what we're really talking about, the salient period here is between June of 2010 and – or, pardon me, May of 2010 and July of 2010, which is the window of time that the court – district court ruled that Mr. Oster has no statute of limitations issues on his 1983 claims. And what you'll find – what the court will see is this prosecution for alleged workers' compensation fraud followed a series of investigations, surveillances, threats, things that could have been much more specifically spelled out in factual detail with dates and – And what about the letter? Will the new complaint have the letter attached? It will, Your Honor. It will have multiple letters attached. Have you seen the letters? I have, Your Honor. Okay. So the letters exist even though you didn't offer any detail or attach them. I did not, Your Honor, and for that I have to fall on my sword. I was counting on a different interpretation of Rule 12b-6, which is that's an evidentiary issue and I was concerned about marshalling the distribution of evidence that was critical to my client's case. So I – oh, and I want to bring to the court's attention my – the fact that we didn't address Dahlia Rodriguez, which is a significant case as it relates to my client's status as a peace officer suing his employer. And as this court is well aware, since this case emanated from this district – or this circuit, rather, that that case overruled Huppert v. City of Pittsburgh to a large degree. And I think that one of the issues that the opposition raises is that Mr. Oster did not sufficiently allege that he was speaking as a private citizen on a matter of public concern. And I think that if the court looks at the test – I don't want to reiterate what's in my brief, but I think he passes that test with flying colors. I think he's – what he's really talking about here is departmental corruption. And viewed from a firsthand perspective as a sworn peace officer, seeing these people, knowing these people, and seeing it for years before it finally happened to him, the whip cracked on him. And I think that, with respect, I should have – I should have stated at the outset my intention to reserve one minute. I'd like to reserve one minute for rebuttal. With that said, I'm prepared to submit on my brief. The court did address – You only have five minutes, so you may do that if you like. Okay. I don't think it's necessary, Your Honor. I think it's a very straightforward case. We're asking for leave of court remand to the district court for purposes of filing a second amendment complaint. Thank you. Let me ask you a question. I'm sorry. Did you ask for leave to file a second amendment complaint? I did in my moving papers. I don't know if I specifically – Did the district court specifically deny it? It was denied, yes. And was the district court decision before or after Dahlia? It was prior to. Okay. All right. Thank you. Okay. Thank you. Good morning. Kevin Kreutz for the Defendants County of Solano – excuse me – in the Solano County Sheriff's Department. This question of whether or not this case was about a retaliatory prosecution does not even arise unless the appellant plausibly alleges speech that satisfies the content, form, and context requirement of this Court and the Supreme Court. Well, he said things, and the district court said they were too vague, and then said you can't amend a complaint. So why don't we just let him amend the complaint? Then we can tell. Your Honor, he – the law of this circuit is that employees and the government employees at the place of work are not given broader rights by the First Amendment, but the First Amendment serves to preserve the rights that employees would have otherwise as private citizens to speak on matters of public concern. But there's specific case laws, I understand it, that if you go outside the line of command, essentially, and you say that there's some widespread pattern, even if it's employee-related misconduct, and here he says it was dangerous and corrupt or something, that that counts, no? No, Your Honor. The Ninth Circuit decision of Deroshers v. City of San Bernardino. I'm sorry, what? Deroshers, D-E-R-O-C-H-E-R-S, which was cited by the district court in giving the plaintiff an appellant leave to amend, is a case where the court affirmed dismissal of an action, and I believe it's summary judgment, of city police officers who were complaining about a grievance they had with deputies, excuse me, sergeants and lieutenants higher up the chain of command. They characterized these complaints about how that person supervised them as being detrimental to the morale and competency of the department. And the court said, in the context of First Employment Jurisprudence for public employees, if the speech relates to a matter of legitimate public concern, then that is protected, but if it relates to generalized or personal grievances, it does not. And in those contexts, clothing these allegations about internal grievances as being related to the morale or competency of the department. But since we haven't seen the letters that he wrote, how do we know what it was that he complained about? Your Honor, it was the plaintiff's responsibility to either attach the letter, which would, as Judge Mendez said, have been the easiest way to evaluate whether there were plausible claims here. Right. But since the letters exist, why not just why shouldn't that have been clear from the judge after the First Amendment complaint was filed to say, you know something, Counselor, I don't think you've done it. You have to attach the letters or you're going to have to give us the detail out of the letters, time, place, manner, addressee, so on. The court did do that, Your Honor, in denying or granting the motion to dismiss in the first instance. In the first complaint, Deputy Oster said that there was corruption in the department and that was what he was writing about. And the district court said corruption could state a plausible claim under the First Amendment, but it depends what exactly you were talking about. And that's why on bonk this circuit and Dahlia had no problem holding that Deputy Rod Dahlia, excuse me, Detective Dahlia, spoke on matters of legitimate public concern because he gave specific details about an investigation of a robbery at a bakery in Burbank called Porto's. And he talked about threats, assaults of witnesses, being told to be quiet, and then actually reporting all of this to the sheriff's department outside the chain of command. Here there's no such similar factual detail. And Rule 8 requires that. Under Iqbal and Toomley, the requirement is that there be factual allegations that allows the court to draw the reasonable inference that the plaintiff may be entitled to relief. When the allegation is merely that there was corruption or after giving an opportunity to amend, that becomes dangerous and lawless culture. There's no opportunity for the court to suss out the protected speech from the unprotected speech. And defendants such as Cownie and other government agencies rely upon the protections of Rule 8 that if there's not a plausible or factually based claim for retaliation under the First Amendment, they should not have to be hauled into discovery. The plaintiff certainly has the right to not disclose the letter. Ginsburg. Right. But that's easily cured by giving him another chance to amend. Because we know exactly. I mean, what's different about this case is we know exactly what he would have to amend. He would have to attach the letters. And then we can all do something sensible. Correct, Your Honor. But when this Court considers whether relief to amend was improperly granted, the standard is abuse of discretion. And where there was a prior opportunity to amend, as there was here, the discretion for the vest in the district court is very broad. If the district court presented were facts on the First Amendment complaint about  then it would justify Judge Mendez saying, okay, you can have another chance to explain that. But where he goes from one generality to another, there's nothing to give. Well, it wasn't. The second version did say that he went on and explained everything that had happened before to him. It just didn't say what she had otherwise explained in the complaint. So it wasn't really that vague. Your Honor, the only difference in our reading of the two complaints is that in the first complaint, he references a letter at an unspecified date to the Department of Insurance and Workers' Compensation. That same allegation appears in the First Amendment. The only change is a description of the allegations as being a dangerous or, excuse me, a corruption to a dangerous and lawless culture. But the second half of that sentence. What about the rest of it? The second half of that sentence in both pleadings relate to treatment of Deputy Oster despite his qualifications, and that's in paragraph 30 and 19 of both pleadings. This Circuit has routinely held that personal grievances about how a person feels about their employment experience is not clothed with First Amendment protection. If this were a situation, as Your Honor points out, where there were facts that were put in the complaint, there would have been potentially an opportunity for leave to amend or a second shot to do that. But the law of First Amendment retaliation in this Circuit is clear. This is not a muddled area of law on the first issue. We understand that Dahlia clarified things on the second element as to when an employee speaks as a private citizen. But consistently, both before and after Dahlia, there has always been a requirement that the litigant identify the content, the form, and the context of the speech. And if you look backwards at some of the decisions that have arisen out of this Circuit and apply the dangerous and lawless culture generalizations, there would have been no way for those courts and those decisions such as DeRocher's or Kosalter or Antoine to draw the dividing line between protected speech and unprotected speech. And in reality, in a five-step inquiry that is a retaliation case, what was actually said should be the easiest element to plead. It's the basis for the entire cause of action. The rest of the elements are much more difficult and much more fact-intensive. It shouldn't – it's not an unreasonable request to ask that a litigant come forward and say what they've already claimed to have said and do it promptly. Otherwise, entities are being forced to go beyond the pleadings into costly discovery and it would not be – You never found an answer, right? You just found motion to respond. It's just at the dismissal phase, Your Honor. Presumably, you have the letter too. Your Honor, we asked for the letter. I know that's beyond the scope of the pleadings. It's in the court's docket. We asked for the letter because we didn't know our own internal search and we didn't have it. This isn't an instance where we're trying to play games with the court or the litigant. It's simply an instance where we didn't know about the letter and didn't know its contents and wanted to know what was going on. If something had been presented that plausibly stated a claim, we wouldn't have filed a second motion to dismiss. We'd have dealt with it on the merits. It's for those reasons we ask that the court affirm. Thank you. Thank you very much. May it please the court. Briefly, although the court does have an interest in preserving judgments of the district court and this court is not in – is not going to relish telling Judge Mendez that he abused his discretion, I  Well, I don't think so. But he did give you a chance before. I mean, he told you about this problem. What was added to the second complaint? Right. Again. Were it dangerous? Was that what was added? It was – he got hung up – the court got hung up on I'm asking you. What was added in the second complaint in this regard? I believe It's the First Amendment complaint. Sure. I believe the court would find that it's paragraph 30. Right. Under the second cause of action where, as the opposition correctly points out, there's not a date certain. On this date, Mr. Oster wrote letters to these people. But what the complaint or what paragraph 30 does say is that in June, and then I specifically referenced the statute of limitations there because Judge Mendez made mention of it in his ruling on the initial motion to dismiss, Mr. Oster did write. It wasn't just one letter. The first complaint says that he wrote to the area's elected officials as well as the California Workers' Compensation Board and the California Department of Insurance to complain about the SCSD, the corruption within the department and the way it treated plaintiff in spite of his qualifications. Right. So in the second complaint, the – what is added? That it was in June? Right. And again And were it dangerous? Correct, Your Honor. I mean, the document speaks for itself, and I certainly won't quibble. As the author of both documents, I won't come before this Court and say that it was the most artful or the most And what did the district court tell you that that was missing the first time around? There was no instruction, again, not having the first ruling in front of me. There was no direct instruction. You inferred the first time he didn't focus on this particular allegation or he did? There – I believe that it wasn't – there wasn't a focus on this particular paragraph in the complaint that said, plaintiff, you must show us these letters or at least give us a detailed factual summary. That came in his ruling in judgment as his ruling dismissing the First Amendment complaint and essentially gave us the burden of attaching, essentially attaching these letters to the complaint, which we believe is an incorrect interpretation of Rule 12.6. Mr. Counsel, one thing I've been confused about this case the whole time is that the litigation in this case is partially going to be about these letters. Right? I mean, that's what you're claiming. Yes, Your Honor. Without revealing any attorney-client-privileged communications with Your Highness, it seems to me if I were filing a lawsuit and I was saying these letters are what got my client in hot water, I'd be quoting from the letters all over the place. And it seems like there's been this kind of weird, there are these letters but no probably if you just put the language in the letters. So can you give me a non-privileged answer as to why? I can give you, I can actually, Your Honor. There was at the time, this case, if I can, I'm going to hurry not to go over my time. This case started originally with FIHA causes of action as well under State law because they were timely and you have a one-year period after you file your complaint to plead a FIHA cause of action. Well, Mr. Oster, in the process of dealing with getting charged with workers compensation fraud and arrested and charged and prosecuted, had certain issues that he was dealing with, with his criminal defense team with whom I was trying to work to navigate through the civil court system to get him some sort of relief and deal with a lot of these things that crossed over the factual nexus of this civil litigation and his arrest for workers compensation fraud. The first time, now that I have found it, the district court said, although Plaintiff alleges that his speech also related to corruption in the department, Plaintiff provides no factual allegations of when he wrote the letters or what the statements were that would allow the court to determine whether the speech is protected. Plaintiff argues in his opposition that speech related to discrimination is a public concern, but he does not allege in the complaint that his letters are related to workplace discrimination. And except for saying it was in June, nothing in the First Amendment complaint was responsive to that or those concerns. So the question is, why – I mean, the legal question is, why wasn't the judge entitled to say I gave you a chance, you didn't do it, that's it? Are we supposed to reverse for that? Oster, I just believe that the – what we're talking about here, if the court's going to look at anything beyond the four corners of what's been presented and weigh the issues of fairness versus prejudice to the defendant. Well, we can't judge that because we don't have the letter. I mean, it's perfectly possible that it wasn't done because it wouldn't help you. Absolutely. And the best I could do is make an offer of proof or a representation that is not privileged that the letters would indeed further my client's argument. I simply did not deem them necessary to attach to the complaint. And to that extent, I certainly am willing to fall on my sword for my client. Okay. Thank you very much. Thank you, Your Honor. The case of Oster v. County of Solano is submitted, and we will go on to Homstock v. Humphreys. And for purposes of planning, we're going to take a break after the next case, United States v. Harrison.
judges: Berzon, Bybee, Owens